We're now moving to the second case on the calendar, Alzokari v. Pompeo. Ms. Brown, are you there? Yes, good morning, judges. Thank you for holding the hearing this way. And to begin, may it please the court that this case calls out for a totality of the circumstances standard to be applied, because without it, it's impossible for the court below or the hearing officer below to determine the reliability of Mr. Alzokari as to his mental competency. It's not possible for the for the hearing officer or the court below to determine the bias or implicit bias of the fraud investigator who served as an interpreter as to whether he was actually adversarial in trying to find a particular conclusion and may have influenced the Mr. Alzokari who arguably was not mentally competent at that time. Without a totality of the circumstances standard, it's impossible to bring in evidence of the pattern of conduct that posts on Yemen to show that it was typical for that post to bring people in, keep them waiting for long and uncomfortable periods of time to try to get them to be amenable to saying statements against interest, perhaps. My next point is that the hearing officer was arbitrary and capricious in not enumerating a standard used to draw his conclusions and accepting the interpreter's conclusion as to mental status, which was tailored to the hearing and discounting the medical report of the doctor in Yemen talking about the Incompetency of Mr. Alzokari stating that it was tailored to the hearing. If the hearing officer is patently unreasonable... You have one more minute. Thank you. It should be found to be arbitrary and capricious and and you should rule accordingly. So the due process issue, as we know in the Matthews case, that there are three standards involved such as the private interest effective. The third one is the government's interest. I should point out that Judge Kogan implied that there is a terrorist slash security interest in keeping a person such as Mr. Alzokari from his children, but there's no substantiation to that. So I just want to point out that that was a due process violation of the analysis of Judge Kogan below. Finally, reliability of a witness is a mixed question of fact and law and the courts have de novo ability to review such cases as is enumerated in the Alam V. Whitaker case and the issue would be whether the plaintiff's statement was not sufficiently reliable to provide a ground for revocation. I think I've summed up my position in my three minutes. All right. Thank you, Mr. Brown. Judge Kalbraisi? Yes, I have two questions. The first one is your client uses his name, Alzokari, which is the same name that he put in his passport application and the one that he put in the naturalization. Behind all the arguments that you are making, are you saying that that name is the name that he has been using since his application for naturalization and it is not fraudulent for him to have used that name in his application for a passport? That's absolutely my position, Judge, that he has consistently used the name Alzokari for all purposes, for all benefits, for all communication with other people. Okay, you hadn't made that in your argument, so I wanted to be sure that this was part of your argument. My other question, though, goes to your due process argument. I have a problem with that because I can understand if your client was denied a passport abroad and so was not able to come back to the United States where he is a citizen, at least unless naturalization is removed and in that case, not being able to come back to your country might raise some due process issues. But he was removed, his passport was removed when he was in the United States and all that does is keep him from to raise due process issues. Well, I would say that that is issues raised by the Matthews v. Eldridge case, which was 424 U.S. 319. The first part of that test is the private interest affected. Now, Mr. Al-Zoukhari would not leave the United States just to go on vacation. He does retain family members over in Yemen, which is a terribly war-torn country, and if he were to travel as a United States citizen with his passport, he would certainly have serious protections there and he would need to go to visit with family members, how they're doing, and it's a human right, essentially, to be able to see his family members. So I think you can distinguish between someone who says, I can't go to the Caribbean on vacation, and somebody who says, Thank you. All right, Judge Westley. Yes, at the time of your hearing in front of Judge Kogan, did you produce or did Judge Kogan have in front of him the evidence of Mr. Al-Zoukhari's Yemen birth certificate? His Yemen birth certificate, I don't recall if he did. Was that ever? That people in Yemen of the age of Mr. Al-Zoukhari, when they were born, didn't have birth certificates. It's not a very paper or wasn't a very paper-oriented society, but I don't know offhand. Okay, and okay, but we know at the time that his father made an application. I see there's something in the record at AA, or Appendix 61 purporting to be his birth certificate. Were you the person that provided that? I'm just, I'm looking right now at Appendix 61. I didn't obtain it, but I imagine I would have provided it. Good Lord, Mr. Brown. You don't know? Good Lord. Let's go on. At the time in 1972 when his father petitioned to bring him to the United States, his name was different than it was when he naturalized, was it not? He listed on the application Ahmed Ali Zoukhari, two different words, correct? Yes, Judge, and unfortunately... Let me ask you. Go ahead. Go ahead. No, you go ahead. Okay, I was just going to say that I've always been of the opinion that if you can pronounce the word and it sounds the same regardless of the spelling, since it's a transliteration from the Arabic language, that that's close enough because it's not, you know, there's no standard translation of people's names from Yemen, from the Arabic language to our language. Well, many people came to the United States with Slavic names and became Smiths and Browns also at Ellis Island, that's for certain. Let me ask you lastly, did the government assert at the time that they revoked his passport that he had fraudulently obtained his naturalization papers? Well, they said that there was fraud or misrepresentation on his naturalization papers, but no, they did not actually. No, they didn't. This is not a hostile question. Good Lord. They did not, did they? And indeed, do not the regulations require that he apply for a passport in the name in which he's given, but that appears on his naturalization papers. And that's what he did, yes. And do not the regulations also recognize that the name that's to appear on the naturalization papers is the, quote, name given at that time, is that correct? That is correct. All right, that's HCFR section 338.1 sub A, correct? Yes. Thank you. All right. Thank you, Judge Wesley. I just want to follow up on that and Judge Calabresi was referencing this as well. Under the government's position here, Mr. Brown, your client could never travel abroad and could never obtain a passport as a U.S. citizen based upon their current position under the name that's on his certificate of naturalization and the date of birth on a certificate of naturalization, right? That is absolutely correct. And to take it a step further, if you were to pay taxes under the name, under his certificate of naturalization, vote under that name, under the government's theory in this case, he'd be committing some type of fraud, right? Because that's their allegation is that that's fraudulent for him to use the name on his naturalization certificate. I would agree with that, yes. All right. The only thing I just wanted to address on the burden of proof issue, Judge Kogan indicated, I think it was only one sentence, but he indicated even if the government had the burden of proof, he believed that it could be met here based upon all the things that were in the record, including how detailed the statement was by your client, the fact that he corrected the name of a town in the statement on the issue of dementia, that, you know, he, the daughter-in-law said it only began in 2013 and gradually deteriorated. He sent two emails two months after the interview. He submitted a declaration in 2018 that was indicating that at least he was competent enough to submit a declaration. So why is that conclusion wrong, that even if the government had the burden here, they could still meet the standard? Well, if a person of limited capacity can spot a name and say that's not how the name should be, is that any different in the way from the dog recognizing its name? That doesn't mean that the person would would comprehend everything that was said. As to the, as to the daughter-in-law commenting that she didn't observe anything showing his diminished capacity at that time, you know, the fact that Alzheimer's, from what I know, is a gradual process that accumulates over time is such that if the daughter-in-law only had simple conversations with him as to what he'd like for dinner or something, he would be able to answer it. But when you're dealing with complex legal questions under great stress, such as at an interview, at an embassy, that is a trigger that is a different circumstance, and certainly the daughter-in-law wouldn't be competent to know about that. We did put in documentation from doctors who did see him in Yemen to establish that he was at the beginning stages of his mental incompetency, and since there was no totality of the really putting in how unreliable he was as a witness, I'd also point out in... Let me just say, let me just ask just one last question. On the totality of the circumstances argument, though, there's nothing in the APA that says, in terms of the agencies have to apply such a standard, there's no case that says they have to apply a totality of the circumstances standard, unless you can point me to one. So you're essentially trying to add a new standard within the APA where the standards are very well-established. Isn't that true? There's nothing in the statute. There's nothing in the case law. Well, I would say basically that if there's a showing of improper behavior that extrinsic evidence can be brought in to show what's going on, which is essentially a totality of the circumstances standard. And yes, we are asking this court to make that finding in the facts of this case. It is it is perhaps a new situation for you to rule on. And I would cite to citizens to President Overton Park, Incorporated, Evolpe, which was 401 U.S. 402, and to the conclusion I just presented. All right. Thank you, Mr. Brown. Mr. Marutolo. Good morning. May it please the court. My name is Joseph Marutolo, and I'm an assistant U.S. attorney with the Eastern District of New York here on behalf of Defendant Apellee. This court should affirm the judgment of the district court. I hope to discuss this morning, first, that plaintiff failed to establish that the State Department's decision to uphold the revocation of his passport was arbitrary, capricious, and abuse of discretion or otherwise not in accordance with the law. And second, that contrary to plaintiff's contentions a moment ago, the district court properly held that the State Department applied the appropriate legal standards in revoking plaintiff's passport and did not violate the plaintiff's due process rights. First, the district court properly upheld the revocation of plaintiff's passport. Plaintiff could not overcome the evidence of his own sworn statement to the State Department in which he admitted that he provided a false name and a false date of birth on his passport application. Specifically, as the district court explained, the State Department determined that plaintiff told at least two lies when applying for his passport. Plaintiff said that his name was Ahmed Ali Al-Zoukhari rather than Ahmed Mohamed Al-Badani, and plaintiff said that his date of birth was in 1955 rather than his true date of birth in 1948. The district court also noted that the plaintiff admitted to smuggling numerous people to the United States, claiming them as his children. Given the concessions and admissions that came directly from the plaintiff, the complete absence of contradictory evidence, and in light of the deferential standard of review of agency actions under the APA, the district court correctly affirmed the State Department's decision to uphold the revocation of plaintiff's passport. And contrary to what you just heard from plaintiff's counsel, the State Department applied the correct legal standards in the underlying procedure. As an initial matter, the district court correctly dismissed plaintiff's claim regarding the totality of the circumstances test due to plaintiff's failure to raise this claim in the State Department's administrative proceeding. But even if the plaintiff had raised the claim in the administrative proceeding, as Judge Bianco just pointed out, it is the passport applicant at a post-revocation hearing who has the burden of proving by a preponderance of the evidence that the State Department can properly revoke the passport and must return it to the applicant. The totality of the circumstances is not part of that test. And plus, even if the hearing officer were required to consider the totality of the circumstances, the court would uphold the decision to revoke the plaintiff's passport, given all of the evidence that has been provided. And further, the district court observed that the plaintiff has not directly challenged the accuracy of the statement containing the admissions of lying, but has instead tried to discuss the reliability. And the district court ultimately found that the decision to revoke the passport was appropriate. All right, Mr. Marichoux, I think three minutes are up, so I'll turn the question to Judge Calabresi. Yes, I have just one problem. That is, I am inclined to agree with you that there's plenty of evidence in the record on the basis of which this fellow can be viewed as a scoundrel and perhaps to have fraudulently gotten naturalization. And I agree with you about the totality of the circumstances. But my problem is that once he used this name and this date on his naturalization, he was bound to, required to, under the rules of naturalization, to continue using this name. So whatever he described it, I don't see how the use of this name or this date on his passport application is fraudulent. That's the name he had to use for taxes, for passport, and for everything else. So it seems to me that it is wrong on its face to say that the application for the passport was fraudulent. The proper thing is to go after him on naturalization. But at the time of the passport, whatever he thinks, that's the only thing he could use. So how could that be a fraud? Well, Your Honor, the plaintiff still has the burden of needing to show his identity pursuant to what's required under the regulations. And here, the plaintiff has not met that burden in his application. And during this process, he admitted to using a false name and a false date of birth. No, no, excuse me. He admitted to using the name that he used on his naturalization, and that that was fraudulent or false with respect to the naturalization. But that's what his admission was. And how could he use any other name? If he had used a different name, even the name that was the true name, that would be fraudulent, because it isn't the name on his naturalization. It would be a fraud for him to use what was his actual name, whatever he describes it. That's what that's my point. Once he used that name in naturalization, that's his name. Well, Your Honor, it's still under the regulations. It is still appropriate for the State Department to revoke a passport if the plaintiff has not had proven by a preponderance of the evidence that he has shown his identity. The burden is on the plaintiff to make that showing, to show his identity. And here, given the evidence in the record, given the information in the record, the State Department correctly looked at everything that was in front of him, in front of the hearing officer, examined the statement that counsel has not challenged the accuracy of, indicating that he's also used this name from his birth certificate of Al-Badani and a different date of birth, and also admitted to trunculate in numerous peoples of the United States, and decided that it was appropriate to revoke the passport. And given the record, and given what was before the hearing officer, through two separate hearings, the State Department correctly held that the passport should be revoked. And that decision, under the deferential standard of review under the APA, was not arbitrary and capricious. Thank you. Judge Wesley? Yeah, the fact that he was known or may have used a name previously, or came to the United States by a name, a different name, doesn't establish that he defrauded the United States at the time that he naturalized, does it? Well, Your Honor, I think that's a different question. Simple question. Your Honor, it's a simple question. Does that establish that he defrauded the United States if he used a different name, if he was born with one name, but then he ultimately applies for naturalization with a different name? Your Honor, yes, it would appear that he did. Well, my grandfather came to the United States with a name that was altered, and he applied for naturalization with the altered name. Was my grandfather commit fraud? Well, Your Honor, I think this situation... Probably not, I would suspect. Correct, Your Honor. However, I think... When he came to the United States, yes, Your Honor. Yeah, so we know that his father petitioned the United States to allow him to come to the United States under a name different than the name that he ended up using, right? That's true, but that doesn't change the fact that... So, does that... Now, let me ask you this. Does that prove that he defrauded the United States at the time that he applied for naturalization? No. So, what proof do you have that he defrauded the United States at the time that he applied for naturalization? We'll get to your... I know what you want to tell me about the passport, but tell me what proof there was in front of the State Department that he defrauded the United States as to his... Your Honor, let me clarify. None. Your Honor, let me clarify. The issue, though, is not whether he defrauded the United States when he nationalized. No, we'll answer the question. We'll get to what the issue is. None, correct? Based on the administrative record, no. You're right, you're right. All right, all right. Now, what... Now, pursuant to the regulations, 22 CFR section 51.25a, what is the name that he was required to use in his application for a passport? Well, Your Honor, it... I'll read it to you. A passport... Excuse me. A passport shall be issued in the full name of the applicant, generally the name recorded in the evidence of nationality and identity. What name should he have applied for the passport in? Your Honor, it's not clear what name, based on... Oh, what are you talking about it's not clear? It's quite clear here what name he was supposed to use. He was supposed to use the name that appeared on his naturalization, was he not? Well, Your Honor, ultimately, Mr. If that name was not procured by fraud, if that name, that identity, that naturalization was not procured by fraud, wasn't he entitled to use that name when he applied for a passport? The Al-Zaqqari name? Yes. He could have attempted to use it, Your Honor, but the factor here that the State Department looked at was that he also provided a statement with a different name, indicating that he had a different identity. So ultimately... The fact that he had a different identity doesn't establish that he defrauded anybody, if he disclosed that he had a different identity at the time that he changed it, would it? Well, you haven't established, you have not established that when he assumed the identity of, his current identity and naturalized, that that he somehow defrauded people, that he lied about it. You haven't established that. Nothing in the record establishes that. There's not a shred of evidence about that. But, Your Honor, I think that goes to a larger point, that the issue here isn't that the United States is seeking to denaturalize Mr. Al-Zaqqari or taking any other... You don't have enough proof to denaturalize, that's why you took his passport, because you can't prove that. But you can imply that he defrauded the United States when he naturalized, and you can claim that you can take his passport because it's the lower standard because he doesn't have a significant liberty interest in this case. But I frankly think this is appalling. Your Honor, I don't... How do you get through the back door, which you can't do through the front door? Well, Your Honor, again, the plaintiff here has brought this lawsuit, has had multiple hearings with the State Department, and the question before the court is whether or not the District Court's decision upholding... Let's talk about the District Court's decision. The District Court decision decided that the burden of persuasion was upon Mr. Al-Zaqqari, and he cited to a regulation, correct? Yes, Your Honor. Was that regulation in effect at the time of the hearing? It was not. Your Honor... It was not. So there's an error of law by the District Court judge. Maybe we should remand it to the District Court judge to recognize that his determination of the burden of persuasion was not pursuant to a regulation that had not yet been enforced. He also said that you had a significant national security interest. Did you deny Mr. Al-Zaqqari his passport because you had security interest concerns? Well, Your Honor, the record does indicate and does make multiple references to the fact that Mr. Al-Zaqqari had smuggled numerous people to the United States, claiming them as his children. How old was the child that he wanted to smuggle? Well, there were multiple people that were smuggled that were allegedly his children. How old were they? Children? And that was a security threat to the United States? Did you make a finding? Did the Secretary of State make a finding that there was a security concern about the smuggling of children into the United States? No. That was not grounds upon which you... Don't just answer the question. Was there a finding to that effect? Well, the finding was related to the fraud, but the State Department did note that Mr. Al-Zaqqari, over the course of a number of years, did smuggle in people to the United States. Indeed, when he sought to obtain a consular report of birth abroad, he was purported... I understand that. I don't disagree with you about the smuggling aspect, but is the simple act of smuggling someone into the United States present a security concern? Maybe it's because they're from Yemen that you could somehow make the leap of faith that because they're Muslim or Arabic that somehow they present a security concern. I'm not certain that this is legitimate, but isn't that the implication? No, Your Honor. I think as the District Court correctly pointed, the State Department has a strong interest in preventing passport fraud and in preventing the smuggling of any individual in the United States, regardless of where they're coming from. The District Court said it was based on security interests, and I want to know where in the record you articulated that there was some reason to believe that what Mr. Al-Zaqqari was doing represented a security concern for the United States. Well, Your Honor, you're right that the underlying decision was rooted in the fact that the plaintiff did not show his proper identity because he had provided a different name and a different date of birth. But there certainly is references in the record to the fact that he was involved in the smuggling, and that's what Judge Hogan relied on. Go ahead. I'm sorry. I didn't mean to interrupt you. I apologize. Go ahead. No, Your Honor. I'm sorry. One last thing. Does this trouble you that this is strikingly similar to the case in the Northern District of California, Omar? Same officer, same embassy, same interpreter, same story. A Yemeni person gets his naturalization under a false name, then abuses that name, gets a passport under his naturalization name, and then smuggles people into the United States. I mean, it's a carbon copy of that. And there, when the Northern District issued the injunction, directed you to issue a passport, the government takes an appeal to the Ninth Circuit. You settled the case and asked the District Court to withdraw the opinion, and you gave that fellow his passport back, didn't you? Well, Your Honor, I think that's a distinguishable case, and I think one key distinction is that here, the plaintiff conceded in the reply brief at page 10 that they're not raising any issues of coercion in this case involving what happened at the Yemeni embassy. There's no dispute. The District Court observed that they're not challenging the accuracy of the statement that Mr. al-Zaqqari provided. And as the District Court noted, the fact that the translator here worked for the government is not in and of itself to show that the translator is biased in favor of the government. I just asked you if it troubled you that it was exactly the same. Apparently, it doesn't. Thank you. Mr. Merito, let me just ask you two questions. I want to go back to this issue. Obviously, APA review is deferential, as you noted. But as you also noted, an agency is bound to follow their own rules and regulations. And Judge Wesley mentioned one CFR, but I want to give you something else. FAM 301.8.3, subsection D says, the agency is bound by law to accept certifications of naturalization as proof of citizenship, and the agency cannot look behind the certificate. And in another subsection of the same regulation that Judge Wesley cited, 22 CFR 51.25, subsection D2 says, a name change will be recognized for purposes of issuing a passport if the name change occurs in one of the ways is by certificate of naturalization issued in a new name. So by taking a position that was taken here, isn't that directly contrary to both of those provisions, where if it's on the certificate of naturalization, that's the name that's on there, and the date of birth, that's what is bound to utilize for purposes of a passport? Well, Your Honor, again, I think here the difference is that we have information from the plaintiff himself indicating that he's using a false name. It says you can't look behind the certificate. That's in essence what's going on here. It was noted like indirect denaturalization. We're going to look behind their certificate and see whether or not at the time you were naturalized under this name, whether it was your real name or not. But it says you can't do that. Well, Your Honor, I don't think it is an indirect denaturalization. Mr. Al Zafari remains in the United States. There are no actions, and the passport document itself, yes, has been removed, but he has otherwise had no other loss of any citizenship. How are you following these regulations? If the State Department is doing this, how are they following these regulations? Well, Your Honor, I think they're following the regulations in the sense that it's still the plaintiff who has to show his proper identity. And I think here the State Department was confronted with a situation in which the plaintiff is stating that he's providing this false name, false date of birth, and the State Department is confronted with these facts, and now has to determine whether or not Mr. Al Zafari is entitled to retain a passport when there is false information by plaintiff's own statements and something that, again, is not being challenged the accuracy of by plaintiff's counsel in his application. And as a result, they revoked the passport. And again, the question isn't anything beyond what the APA requires. This was not an arbitrary or capricious decision. You're missing my point. My point is the APA also, apart from arbitrariness, requires them to follow their own regulations. Whatever arguments you're making about why they did it, I'm just pointing out, don't seem to be consistent with the regulations. But I don't want to go in circles on that. The other question is on the burden of proof issue. When I was talking earlier to Mr. Brown about totality of the circumstances, I was not really addressing the burden of proof issue. As Judge Wesley pointed out, I think you can see that the CFR 5171 that put the burden of proof on Mr. Al Zarqawi was not in effect at the time of the hearing, right? Well, Your Honor, that precise regulation was not in effect. 22 CFR 5123 was in effect, but they still had it to prove his identity. And again, I think there's no dispute, though, that the burden of production, yes, is on the State Department, but the burden of persuasion is on the person requesting the hearing. And it's important to note also that that regulation did take effect during the course of this long-ranging litigation in which there were multiple administrative hearings. First, there was an action in the district court. It was remanded, another hearing. All these times, the plaintiff was represented by counsel. So we would at least submit that the regulation was in effect at a portion of this proceeding. But assuming that regulation doesn't apply because it didn't apply from the beginning, there's a default provision in the APA, 5 U.S.C. 556B, that says the default for the APA is that the agency carries the burden of proof. So if we believe that if this regulation wasn't in effect at the start of the hearing, that the default provision should apply, why would that be incorrect? Well, Your Honor, even assuming that the default applies and even assuming that the regulation was not in effect, the district court, in my view, assessed that situation because they said, look, looking at the totality of the circumstances, the court would still uphold the decision. So Judge Kogan has already addressed what the plaintiff is seeking here, where this totality of the circumstances test is inserted and found that based on all these factors and based on the record before the decision maker, the decision was ultimately not arbitrary and capricious. All right. All right. Thank you very much. Mr. Brown, you have three minutes for rebuttal. I'm going to rest, Judge, on what has been said by all parties. All right. Thank you. Both of you will reserve the seat.